IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Crim. No. 1:14-CR-246 |
| v. | ) | |
| | ) | The Honorable Claude M. Hilton |
| WILLIAM ANDREW CLARKE, | ) | |
| | ) | Sentencing Date: May 22, 2015 |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through the undersigned attorneys, hereby submits its position on the sentencing of Defendant, William Andrew Clarke, in accordance with the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 6A1.2 and the policy of this Court. The United States respectfully requests that in imposing a sentence in this case, the Court find that the Guidelines range (235 to 293 months) calculated by United States Probation Officer Tracey M. White in the Presentence Investigation Report ("PSR") is correct, and impose a sentence within that range. Such a sentence appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

In early October 2013, a Special Agent in the Child Exploitation Investigations Unit of the Department of Homeland Security, Homeland Security Investigations, was engaged in an online undercover operation involving a website called "Family Intimacy." Family Intimacy is a social networking website like Facebook, where users can create profiles, connect with other users, see their friends' activity and like their posts and photographs, and send private messages

to other users. Special Agent received a tip from law enforcement that Family Intimacy was a site where people who were interested in incest and sex with children could interact with other like-minded individuals. Special Agent created a profile page on the site and listed his location as Haymarket, Virginia. Family Intimacy notifies users if there are other members of the site located in their state. Special Agent noticed a member by the name of "Andy Ring" located in Virginia and sent him a friend request, which was accepted.

"Andy Ring" was the profile name of Defendant. Defendant's profile page listed his interests including sex, either one-on-one or in a group, with mothers and sons, fathers and sons, uncles and nephews, and brothers. (GX 2.) Defendant said that incest and family were a "must have," and he said that he had "no problem" with underage children. (*Id.*)

On October 10, 2013, Defendant sent Special Agent a private message through the website that said, "Hey there! Love finding a local guy into the incest thing. …Glad you found me." (GX 3.) In response, Special Agent provided his undercover email address. (*Id.*) Minutes later, Defendant emailed Special Agent, and they began an exchange that lasted approximately three hours and consisted of close to twenty emails. Over the course of the email exchange, Defendant asked Special Agent about his sexual interests, the extent of his incest experience, where he lived, how long he had been having sex with his children, and if the children's mother was "out of the picture." (GX 4-14.) Special Agent told Defendant that he had two children that he homeschooled, an eight-year-old son and a nine-year-old daughter; their mother was in prison; and that he had been molesting his daughter since she was four years old, but he did not routinely molest his son. Special Agent also emailed Defendant two photographs in response to Defendant's request: (1), a photo of himself holding a sign with his arm around his "daughter"

(GX 11); and (2) a photo of his "son" and "daughter" seated on a bench with their faces obscured (GX 13).

Upon hearing that Special Agent had an eight-year-old boy, Defendant immediately replied, "OMG you have a son! We need to meet :)." (GX 8.) When Special Agent asked if he was serious about meeting, Defendant responded, "Yes I am totally serious and think a get together would be awesome." (GX 9.) The two discussed getting together for a weekend visit with the children. Special Agent provided Defendant with his Yahoo! profile name, and Defendant sent him a request to connect using Yahoo! Messenger, an online instant messaging service. (GX 14-15.)

During the initial Yahoo! chat, which lasted slightly more than two hours, Defendant told Special Agent that he had personal experience with incest and sex with children, that he had been looking for another man who would share his children with him, that he was interested in meeting Special Agent in order to have sex with his children, and that he wanted to be sure that what they were discussing was real and not a trap, game or fantasy. (GX 17.) In particular, Defendant asked Special Agent what sexual activity the boy had participated in, and when Special Agent said that he was more into the girl than the boy, Defendant responded, "well he needs me around LOL." (GX 16-5.) When Special Agent asked Defendant if he would sexually abuse the girl in addition to the boy, Defendant replied, "of course." (GX 16-6.) The two men began making plans to meet the following day, and then Defendant suggested that they talk on the phone. (GX 16-7, 16-9.)

During two phone calls with Special Agent, Defendant spoke more about his sexual experience with children, his frustration with not being able to find anyone willing to share his

3

children with him, and his interest in meeting Special Agent to have sex with his children. (GX 18.) Defendant explicitly said that he is interested in having sex with boys and girls, and called the meeting with Special Agent "an ideal situation." (*Id*.) Special Agent told Defendant that it would be thrilling to watch Defendant having sex with his children, and Defendant replied, "That's awesome. It's thrilling for me too." (*Id*.) Although Defendant was interested in meeting that evening, the two made plans to meet the following day, Friday, October 11th, at a McDonald's restaurant purportedly near Special Agent's house. Special Agent emailed Defendant a description of the white minivan he would be driving. (GX 19.)

The next morning, Defendant and Special Agent conducted an online video conference using the Skype messaging platform at Defendant's suggestion. The conversation included topics such as sexually-transmitted diseases, sexual interests such as bondage or "S&M," and concerns about whether either of them was a law enforcement agent. (GX 22.) Special Agent asked Defendant what he wanted to do with the children, and Defendant responded that he would follow Special Agent's lead and then "join[] in," and added that he was "open to absolutely everything." (*Id*.) Specifically, Defendant expressed an interest in performing oral sex on both the girl and the boy, and having the boy perform oral sex on Defendant. (*Id*.) The video chat concluded with Defendant telling Special Agent that he would meet him at the McDonald's around 1:30 p.m. and giving him a description of the car he would be driving. (*Id*.)

Around 1:50 p.m. on October 11, 2013, Defendant was arrested in the McDonald's parking lot as he approached Special Agent, who was sitting in his vehicle. In his post-arrest interview, Defendant denied that he planned on having sex with Special Agent's children, but said that "maybe down the road [he] would have considered it." (GX 41.) Defendant also said,

4

in response to a question about having sex with children, that "on some level . . . [he] must believe that it is okay." (*Id.*)

Law enforcement conducted a search of Defendant's vehicle and found condoms, lubricant, bags of candy, and a piece of paper containing the names and ages of the children Special Agent told Defendant would be with him at the McDonald's.

On July 17, 2014, Defendant was indicted on one count of coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). Defendant pleaded not guilty and demanded a jury trial. On February 24, 2015, following a one-day trial, a jury found Defendant guilty as to the charge in the Indictment.

The statuary penalties for Defendant's offense are: a mandatory minimum term of ten years imprisonment with a maximum term of life imprisonment; a maximum fine of $250,000; a special assessment of $100; restitution; and a term of supervised release of five years to life.

## **ARGUMENT**

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the] Guidelines and take them into account when sentencing." *See also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)). However, courts "are not left with unguided and unbounded sentencing discretion." *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Instead, at sentencing a court must first

calculate the Guidelines range, then consider that range as well as other factors set forth in both the Guidelines and 18 U.S.C. § 3553(a) before imposing the sentence. *Hughes*, 401 F.3d at 546.

## I. The Appropriate Guidelines Range

The United States agrees with the Guidelines calculations set forth in the PSR. The Probation Officer correctly calculated Defendant's base offense level at 28 under U.S.S.G. Section 2G1.3(a)(3). The offense level is increased by two levels pursuant to Section 2G1.3(b)(3) because Defendant's conduct involved the use of a computer. The offense level also is increased by eight levels pursuant to Section 2G1.3(b)(5) because the offense involved a minor who had not attained the age of twelve years.[1] With these two additions, and no further adjustments, Defendant's final offense level is 38. (PSR at 9.) Since Defendant is in criminal history category I, (*id.* at 10), he faces an advisory Guidelines range of 235 to 293 months in custody. (*Id.* at 16.)

## II. The 18 U.S.C. Section 3553(a) Factors

Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in Section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D). Applying these sentencing factors to this case demonstrates that a sentence within the Guidelines range of 235 to 293 months is reasonable and

---

[1] The definition of "minor" in this Guideline includes fictitious minors who are represented by law enforcement as being under 18 and available for sex. *See* U.S.S.G. § 2G1.3 cmt. 1.

appropriate.

The nature and circumstances of the offense are extremely serious. Defendant attempted to use Special Agent to persuade two children under the age of ten to engage in sexual acts with Defendant. Defendant created a profile on an incest website in order to find, and be found by, men who would be willing to let Defendant sexually abuse their children. By his own statements, Defendant had been searching for someone like-minded for a long time, and he actively worked to create a situation in which he would have access to children to sexually abuse. This was not an accident, a spontaneous decision, a mistake, or fantasy. Rather, Defendant's criminal conduct was intentional, planned, and deliberate. It was Defendant who first said that he and Special Agent needed to meet, it was Defendant who first provided his phone number to escalate the planning, and it was Defendant who repeatedly suggested a video chat. Defendant was so eager to meet Special Agent and sexually abuse his children that he said he was thinking of driving to Northern Virginia on the very first day that they interacted. Defendant spoke in graphic terms about exactly what sex acts he intended to engage in when he finally got access to Special Agent's children. In sum, Defendant wanted to find children he could sexually abuse, found Special Agent, suggested a meeting so he could sexually abuse his children, and then showed up at the meeting.

Defendant's conduct deserves a significant custodial sentence in order to impress upon Defendant the seriousness of the offense and the importance of obeying the law. In addition, a sentence such as that contemplated by the Guidelines range in this case would ensure that Defendant does not attempt to coerce or entice any other minors into engaging in sexual activity, and would deter others from doing so as well.

# CONCLUSION

For the reasons stated above, the United States respectfully requests a sentence within the Guidelines range, followed by a period of supervised release of at least five years.

Dated: May 15, 2015

                          Respectfully submitted,

                          Dana J. Boente
                          United States Attorney

By:     /s/
                          Scott A. Claffee
                          Special Assistant United States Attorney (LT)
                          United States Attorney's Office
                          Justin W. Williams U.S. Attorney's Building
                          2100 Jamieson Avenue
                          Alexandria, Virginia 22314
                          Phone: 703-299-3700
                          Fax: 703-299-3981
                          Email: scott.claffee@usdoj.gov

CERTIFICATE OF SERVICE

       I hereby certify that on the 15th day of May, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to the following:

    Karin R. Porter, Esq.
    David B. Benowitz, Esq.
    Price Benowitz, LLP
    10605 Judicial Dr., Bldg. A-1
    Suite 200
    Fairfax, VA 22030
    Phone: 703-399-1220
    Karin@pricebenowitz.com
    David@pricebenowitz.com

    /s/
    Scott A. Claffee
    Special Assistant United States Attorney (LT)
    U.S. Attorney's Office
    Justin W. Williams U.S. Attorney's Building
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    Phone: 703-299-3700
    Fax: 703-299-3981
    Email Address: scott.claffee@usdoj.gov