**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4299

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

  v.

WILLIAM ANDREW CLARKE,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:14-cr-00246-CMH-1)

Argued: September 23, 2016      Decided: November 18, 2016

Before NIEMEYER, MOTZ, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

**ARGUED:** Joseph Douglas King, KING, CAMPBELL, PORETZ & THOMAS PLLC, Alexandria, Virginia, for Appellant. Christopher John Catizone, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, Scott Andrew Claffee, Special Assistant United States Attorney, William Carlson, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WYNN, Circuit Judge:

A federal jury convicted Defendant William Andrew Clarke of one count of attempting to persuade minors to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b), and the district court sentenced Defendant to 120 months imprisonment and lifetime supervised release.

On appeal, Defendant argues that the district court erred in denying his motion to suppress evidence obtained in an inventory and warrant search of his vehicle. Defendant also argues that the district court reversibly violated Federal Rule of Criminal Procedure 30(b) by refusing to provide counsel with key jury instructions before closing argument and failing to properly instruct the jury regarding the charged offense. Finally, Defendant maintains that the government did not produce evidence sufficient to support his conviction. Finding no reversible error, we affirm.

I.

While engaged in undercover child exploitation investigative work in early October 2013, Department of Homeland Security Special Agent Kevin J. Laws encountered Defendant on Family Intimacy, a social networking website centered on incest. Defendant's Family Intimacy profile listed his experience with incest, individuals he wanted to engage in incest with, and—-most pertinent to Agent Laws' investigation—-his desire to

engage in incest with minors. Going by the alias "Jaye," Agent Laws sent Defendant a friend request, which Defendant accepted. Defendant then messaged Agent Laws, stating that he was glad Agent Laws had reached out and noting that they lived near each other. Agent Laws messaged Defendant back, providing him with Agent Laws' undercover email address so that they could communicate outside of the website.

On October 10, 2013, Defendant emailed Agent Laws and asked whether Agent Laws had experience with incest. Agent Laws, posing as the single father of two fictitious children, nine-year-old Amy and eight-year-old Mark, replied that he had molested his daughter since she was four years old.

As their conversation progressed, Defendant said that he had been looking for "likeminded" men close by. J.A. 253. Agent Laws then mentioned that although he "[did not] really play with" Mark, Mark had helped him masturbate a few times. J.A. 98, 254. Defendant responded: "OMG you have a son! We need to meet." J.A. 98, 254.

Soon thereafter, Agent Laws invited Defendant over to his house for the weekend, asking whether Defendant would be comfortable with Agent Laws watching Amy and Mark perform sex acts on Defendant. Defendant replied that "a get together would be awesome," and agreed to come over that weekend. J.A. 255.

3

Agent Laws and Defendant then moved their discussions to an online messaging service. There, Defendant further inquired into the children's sexual experience. In particular, Defendant asked Agent Laws how he introduced the children to incest, if Agent Laws had ever "shared" the children before, and if Mark and Amy had ever engaged in any sex acts with each other. Defendant questioned Agent Laws about Mark specifically, asking how it came about that Mark helped Agent Laws masturbate, whether Mark masturbated, and whether Mark could get an erection and orgasm. Agent Laws said that he was more interested in Amy than Mark, to which Defendant replied, "[W]ell [Mark] needs me around LOL." J.A. 265. Agent Laws asked Defendant if he would "also play with Amy." J.A. 266. Defendant responded, "[O]f course." J.A. 266.

Agent Laws eventually suggested that he and Defendant meet at a restaurant near Agent Laws' house. Agent Laws and Defendant then spoke over the phone to discuss their plans for meeting and having sex with the children. Defendant asked Agent Laws what he had told the children about Defendant's upcoming visit. Agent Laws suggested he tell the children that "Uncle Bob's coming over." J.A. 110. Defendant said that it would be "easier" if Agent Laws referred to him by his real name--"Andy"--when talking with the children because that would make his interactions with the children "more natural." J.A. 110. Per

4

Defendant's instruction, Agent Laws reported that he told Mark and Amy that his "good friend Andy" would be coming to their house to engage in sex acts. J.A. 117, 272. During their call, Defendant also asked Agent Laws if he thought the children would talk to him over the phone and if the children were excited about meeting someone else. Agent Laws and Defendant agreed that they would meet the next day, October 11, 2013.

On the morning of their planned meeting, Agent Laws and Defendant discussed Defendant's upcoming visit once more over a video call. During their call, Defendant asked Agent Laws "if it was okay if [Defendant] performed oral sex on Mark and Mark performed oral sex on [Defendant], and also if [Defendant] performed oral sex on Amy." J.A. 116. Defendant also said Agent Laws should "t[ake] the lead and t[ell] [Defendant] when to join in." J.A. 116.

After Agent Laws and Defendant ended their video call, Agent Laws and a cover team set up surveillance at the restaurant at which he and Defendant had agreed to meet. Defendant arrived at the restaurant at approximately 1:50 P.M. Upon approaching Agent Laws' vehicle, Defendant was arrested and interviewed.

While this interview was being conducted, Virginia State Police inventoried Defendant's vehicle. The vehicle was subsequently towed to a Virginia State Police impound lot. The

government later obtained and executed a search warrant for Defendant's vehicle. During their search of the vehicle, the government discovered lubrication, condoms, a bag of candy, an overnight bag, and a piece of paper listing Agent Laws' phone number and the ages of Agent Laws, Amy, and Mark.

On May 22, 2015, a jury found Defendant guilty of one count of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). The district court sentenced Defendant to 120 months imprisonment and lifetime supervised release. Defendant timely filed a notice of appeal.

On appeal, Defendant contends that the district court made four reversible errors by: (1) improperly refusing to suppress evidence obtained as a result of the purportedly unlawful searches of Defendant's vehicle; (2) violating Rule 30(b) of the Federal Rules of Criminal Procedure by failing to inform Defendant's counsel of its jury instructions prior to closing arguments; (3) improperly instructing the jury as to the meaning of "induce" in 18 U.S.C. § 2422(b); and (4) improperly holding that the government produced sufficient evidence to sustain Defendant's conviction. We disagree with all of Defendant's contentions.

II.

A.

Defendant first asserts that the district court erred in denying Defendant's motion to suppress evidence obtained through the inventory search and subsequent warrant search of his vehicle. In particular, Defendant argues that the inventory search violated the Fourth Amendment and that the evidence obtained through the warrant search--including lubrication, condoms, and a bag of candy--should be suppressed because law enforcement officers secured the warrant based on information obtained during the allegedly unconstitutional inventory search.

In reviewing a district court's ruling on a motion to suppress, this Court "review[s] conclusions of law de novo and underlying factual findings for clear error." United States v. Banks, 482 F.3d 733, 738 (4th Cir. 2007) (internal quotation marks omitted). Because the district court denied Defendant's motion to suppress, "we construe the evidence in the light most favorable to the government." United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010).

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." United States v. Matthews, 591 F.3d 230, 234 (4th Cir. 2009) (quoting Maryland v. Dyson, 527 U.S. 465, 466 (1999)). However, a warrantless search may be valid if the search "'falls within one of the narrow and well-

delineated exceptions' to the Fourth Amendment's warrant requirement." United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006) (quoting Flippo v. West Virginia, 528 U.S. 11, 13 (1999)). It is well settled that an inventory search is one such exception. Matthews, 591 F.3d at 234. "For the inventory search exception to apply, the search must have 'be[en] [1] conducted according to standardized criteria,' such as a uniform police department policy, and [2] performed in good faith." Id. at 235 (first alteration in original) (citations omitted) (quoting Colorado v. Bertine, 479 U.S. 367, 374 n.6 (1987)).

Defendant argues that the government failed to produce evidence sufficient to allow the district court to find that the inventory search was conducted pursuant to standardized criteria. The government may prove the existence of standardized criteria "by reference to either written rules and regulations or testimony regarding standard practices." Id. (emphasis added) (internal quotation marks omitted). "To justify a warrantless search, standardized criteria must sufficiently limit a searching officer's discretion to prevent his search from becoming 'a ruse for a general rummaging in order to discover incriminating evidence.'" Id. (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).

Here, in ruling on Defendant's motion to suppress, the district court considered the Virginia Department of State

Police's inventory search policy, General Order OPR 6.01 "Vehicle Impoundment and Inventory," pursuant to which law enforcement officers conducted the search, and the standard inventory search form signed by the law enforcement officer who conducted the inventory search of Defendant's vehicle, which was completed in accordance with the inventory search policy. The district court did not clearly err in finding that this evidence was sufficient to establish that the inventory search was conducted pursuant to standardized criteria, particularly since Defendant does not argue that the Virginia policy did not comply with the Fourth Amendment. Accordingly, the district court properly denied Defendant's motion to suppress.

B.

Second, Defendant contends that the district court violated Rule 30(b) of the Federal Rules of Criminal Procedure by failing to apprise Defendant's counsel of how it would instruct the jury before closing arguments, and that the violation resulted in actual prejudice warranting reversal of Defendant's conviction.

Rule 30(b) of the Federal Rules of Criminal Procedure requires that a trial court "inform the parties before closing arguments how it intends to rule on the requested [jury] instructions." Fed. R. Crim. P. 30(b). Rule 30(b) serves at least two purposes. First, by "inform[ing] trial lawyers in a fair way what the instructions are going to be," Rule 30(b)

"allow[s] counsel the opportunity to argue the case intelligently to the jury." United States v. Horton, 921 F.2d 540, 547 (4th Cir. 1990) (internal quotation marks omitted). Second, by informing counsel of instructions prior to closing argument, Rule 30(b) allows counsel to lodge objections so as to preserve errors for appeal and "aid the court in giving a proper charge in the first instance." United States v. Guadalupe, 979 F.2d 790, 794 (10th Cir. 1992) (stating that Rule 30(b) contemplates the trial court "deliver[ing] a final copy of the charge to counsel and permit[ting] them to raise objections <u>before</u> instructing the jury whether the charge is to be delivered prior to or following closing arguments").

Here, Defendant submitted to the court the following proposed instruction regarding the requisite mens rea for the indicted offense--attempted enticement of a minor: "The government must prove that the defendant intended to transform or overcome the will of an individual . . . . Proof that the defendant merely believed that he was communicating with someone who could arrange an opportunity for him to engage in sexual activity . . . is insufficient for a conviction." J.A. 51. By contrast, the government asked the court to instruct the jury that the government must prove "[f]irst, that the defendant intended to commit the crime of coercion or enticement of a minor to engage in sexual activity; and second, that the

defendant did an act constituting a substantial step towards the commission of that crime." J.A. 49.

At the close of evidence, the court told the parties that it would first instruct the jury and then give the parties an opportunity to object at the end of instructions. Defendant's counsel asked the court if it would be using any instructions proposed by either party, stating that Defendant objected to several of the government's proposed instructions, particularly with regard to attempt. The court responded: "Sometimes I do and sometimes I don't." J.A. 186. Defendant's counsel then requested a copy of the district court's instructions. The court refused the request, stating, "You'll be able to listen and you can object when I'm finished." J.A. 186-87. The court also refused to recite its instructions to counsel before presenting them to the jury. Ultimately, the court did not give the instruction Defendant requested; instead, it instructed the jury that "[t]he terms persuade, induce, and entice should be given their ordinary meaning. In ordinary usage, the words are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence as to some action or state of mind." J.A. 217.

By refusing to provide its instructions to counsel before closing arguments, we must hold that the district court violated Rule 30(b). This violation placed Defendant's counsel in the

11

difficult position of having to argue to the jury without knowing how the court would ultimately instruct the jury. Additionally, the violation deprived the parties of the opportunity to lodge objections to the proposed instructions and thereby give the court the opportunity to correct any errors before instructing the jury.

Nevertheless, although the district court violated Rule 30(b), we may reverse only if Defendant demonstrates that the violation resulted in actual prejudice. United States v. Squillacote, 221 F.3d 542, 572 (4th Cir. 2000); United States v. Burgess, 691 F.2d 1146, 1156 (4th Cir. 1982). We have not yet had the occasion to consider what constitutes prejudice when a district court violates Rule 30(b) by failing to provide counsel with jury instructions before closing arguments. However, this Court's decision in Horton--which dealt with the related question of whether a district court reversibly erred by failing to give counsel additional time for argument after the court provided a supplemental instruction--is instructive. In Horton, we found that the defendant was not prejudiced by the trial court's error in allowing the parties only three minutes of additional argument after providing the jury with a supplemental instruction because "defense counsel made all the arguments essential to his case . . . in his initial closing." 921 F.2d at 547-48 (finding "the factual predicates of [the original

charge and new charge] so similar that the arguments to be made against guilt are essentially the same under both theories").

Like in Horton, Defendant fails to demonstrate actual prejudice because the district court's error did not inhibit Defendant's counsel from making his "essential" argument to the jury--that "the government ha[d] to prove that [Defendant] intended . . . to transform the will on the part of the minor." J.A. 205. Defendant's counsel further explained to the jury that an intent to "arrang[e] to have sex" did not satisfy this requirement. J.A. 205. These two statements reflected the instructions proposed by Defendant. Importantly, and notwithstanding the district court's failure to notify the parties of its instructions, the instruction ultimately given by the district court reflected both governing law and the argument made by Defendant's counsel--that the government had to prove that Defendant intended to "lead[] or mov[e] [a minor] by persuasion or influence" to engage in sex. J.A. 217; see infra Part II.C. Additionally, the government introduced sufficient evidence from which a jury could conclude that Defendant intended to persuade Mark and Amy to engage in sex acts, not just arrange sex acts. See infra Part II.D.

Because Defendant's counsel was able to make "all arguments essential to his case," because those arguments reflected the instructions ultimately provided by the court, and because the

13

government introduced sufficient evidence to convict Defendant under the correct legal standard, we conclude that the district court's violation of Rule 30(b) did not prejudice Defendant.

C.

Defendant next argues that the district court erroneously instructed the jury on the definition of "induce" under Section 2422(b). This Court "review[s] de novo the claim that a jury instruction failed to correctly state the applicable law." United States v. Jefferson, 674 F.3d 332, 351 (4th Cir. 2012). "In conducting such a review, we do not view a single instruction in isolation; rather we consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." Id. (internal quotation marks omitted).

A person violates Section 2422(b) if he "knowingly persuades, induces, entices, or coerces" a minor to engage in unlawful sexual activity, or attempts to do so. 18 U.S.C. § 2422(b). Although the terms "persuade," "induce," and "entice" are not statutorily defined, we have found that they are "words of common usage" and have "accord[ed] them their ordinary meaning." United States v. Engle, 676 F.3d 405, 411 n.3 (4th Cir. 2012). Moreover, these terms are "effectively synonymous," conveying the idea "of one person leading or moving another by persuasion or influence, as to some action [or] state

14

of mind." Id. (alteration in original) (internal quotation marks omitted). Our interpretation of these terms accords with the statute's intent to "criminalize[] an intentional attempt to achieve a mental state--a minor's assent." Id. at 419 (emphasis omitted) (internal quotation marks omitted).

Defendant contends that the district court failed to properly instruct the jury because it did not clarify that "arranging" or "causing"—-one definition of "induce"—-sexual activity with a minor was insufficient to support a conviction under Section 2422(b). Thus, Defendant argues, the district court "impermissibly broadened the definition of the requisite intent and allowed for a conviction based on insufficient evidence." Appellant's Br. at 28. We disagree.

In instructing the jury, the district court explained that "[t]he terms persuade, induce, and entice should be given their ordinary meaning. In ordinary usage, the words are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence as to some action or state of mind." J.A. 217. These instructions mirror Engle almost verbatim. See Engle, 676 F.3d at 411 n.3. And, by emphasizing that the jury must find that Defendant "le[d] or mov[ed] [a minor] by persuasion or influence" to engage in sex acts, the district court's jury instructions required the jury to find that Defendant made "an effort to alter [a minor's]

15

mental state," rather than "merely convey[ing] the notion of 'causation,'" as Defendant suggests. Appellant's Br. at 26. Accordingly, we hold that the district court's instruction fairly and accurately reflected the applicable law.

D.

Finally, Defendant argues that the district court erred in denying his motion for acquittal. In particular, Defendant maintains that the government failed to produce sufficient evidence that Defendant attempted to persuade, directly or indirectly, a minor to engage in sex acts.

"We review de novo a district court's denial of a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010). A defendant who brings a sufficiency challenge bears a heavy burden, United States v. Palomino-Coronado, 805 F.3d 127, 130 (4th Cir. 2015), as "[a]ppellate reversal on grounds of insufficient evidence . . . [is] confined to cases where the prosecution's failure is clear," Green, 599 F.3d at 367 (quoting Burks v. United States, 437 U.S. 1, 17 (1978)) (internal quotation marks omitted). "This Court must uphold a jury's verdict 'if there is substantial evidence in the record to support it.'" United States v. Bailey, 819 F.3d 92, 95 (4th Cir. 2016) (quoting United States v. Wilson, 198 F.3d 467, 470 (4th Cir. 1999)). "In determining whether the evidence

16

in the record is substantial, we view the evidence in the light most favorable to the government and inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." Id. (quoting Wilson, 198 F.3d at 470) (internal quotation marks omitted).

A person violates Section 2422(b) if he "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. § 2422(b). To obtain a conviction under this provision, "the government must prove that the defendant: (1) used a facility of interstate commerce; (2) to knowingly entice or attempt to entice any person under the age of 18; (3) to engage in illegal sexual activity." Engle, 676 F.3d at 411-12. If the defendant is charged with attempt, "the government must prove beyond a reasonable doubt, that (1) he had culpable intent to commit the crime and (2) he took a substantial step towards completion of the crime that strongly corroborates that intent." Id. at 419-420. Mere preparation is insufficient to establish intent. See id. at 423.

Defendant's sufficiency challenge requires us to determine in what circumstances, if any, a defendant can violate Section

17

2422(b) without communicating directly with a minor but instead communicating indirectly through an adult intermediary--a question that this Court has not yet had occasion to address. In enacting Section 2422(b), Congress intended "to criminalize persuasion and the attempt to persuade, not [just] the performance of the sexual acts themselves." Id. at 419; see also United States v. McMillan, 744 F.3d 1033, 1036 (7th Cir. 2014) ("[T]he essence of [the act Section 2422(b) contemplates] is attempting to obtain the minor's assent.").

"One particularly effective way to persuade or entice a person to do something is to enlist the help of a trusted relative, friend, or associate." McMillan, 744 F.3d at 1036. To that end, sexual predators can and do use adults--particularly parents, guardians, or others in positions of influence or power--to attempt to persuade minors to engage in sexual activity. See id.; United States v. Nestor, 574 F.3d 159, 161-62 (3d Cir. 2009). For this reason, our Sister Circuits have uniformly concluded that Section 2422(b) "extend[s] to adult-to-adult communications that are designed to persuade the minor to commit the forbidden acts." McMillan, 744 F.3d at 1035 (collecting cases). We agree and therefore hold that "communications with an intermediary aimed at persuading, inducing, enticing, or coercing a minor to engage in sexual activity fit within [the] common understanding of a criminal

18

attempt that is prohibited by [Section] 2422(b)." United States v. Roman, 795 F.3d 511, 517 (6th Cir. 2015) (first alteration in original) (internal quotation marks omitted).

Defendant argues that even if communications with adult intermediaries can violate Section 2422(b), the government's evidence is insufficient to establish that he attempted to persuade Mark and Amy to engage in sex acts, directly or indirectly through Agent Laws. We disagree.

The government introduced multiple pieces of evidence that, taken together, would allow a reasonable juror to conclude that Defendant intended to persuade, induce, entice, or coerce minors to engage in sex acts and took substantial steps toward doing so.

First, Defendant directed Agent Laws to use Defendant's name when talking to the children about his upcoming visit so that Defendant's interaction with the children would be "more natural." J.A. 110. Accordingly, a reasonable factfinder could conclude that Defendant "attempt[ed] to use [Agent Laws] as an intermediary to convey [a] message to the child[ren]"--a message aimed at persuading the children to engage in sex acts. McMillan, 744 F.3d at 1036. Second, Defendant asked to speak directly to the children over the phone. Third, Defendant asked Agent Laws--an individual Defendant reasonably believed was in a position to influence and control Mark and Amy--if he could

engage in sex acts with both of the children. Indeed, by telling Agent Laws he should "t[ake] the lead and t[ell] [Defendant] when to join in," Defendant expressly relied on Agent Laws' position of influence with Mark and Amy to convince the children to engage in sex acts. J.A. 116.

The government not only produced evidence that Defendant attempted to entice Mark and Amy indirectly through Agent Laws, but also produced evidence that would allow a reasonable factfinder to conclude that Defendant took a substantial step towards directly enticing the minors to engage in sex acts. In particular, Defendant brought candy to what he believed was a weekend visit with Mark and Amy, during which Defendant hoped the children would engage in sex acts. A reasonable jury could have concluded that Defendant intended to use the candy to entice Mark and Amy to engage in sex acts. Because the government produced sufficient evidence that Defendant intended to persuade minors to engage in sex acts and took substantial steps towards doing so, we hold that the district court did not err in denying Defendant's motion for a judgment of acquittal.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.